KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
JOSEPH W. BOTTINI
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
      joe.bottini@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:11-CR-00022-RJB |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | CONSPIRACY TO POSSESS |
| vs. | ) | UNREGISTERED SILENCERS AND |
| | ) | DESTRUCTIVE DEVICES |
| FRANCIS SCHAEFFER COX, | ) |    Vio. of 18 U.S.C. § 371 |
| COLEMAN L. BARNEY, and | ) | |
| LONNIE G. VERNON, | ) | COUNT 2: |
| | ) | POSSESSION OF UNREGISTERED |
| Defendants. | ) | DESTRUCTIVE DEVICES |
| | ) |    Vio. of 26 U.S.C. § 5861(d) and 5871 |
| | ) | |
| | ) | COUNT 3: |
| | ) | POSSESSION OF UNREGISTERED |
| | ) | SILENCER |
| | ) |    Vio. of 26 U.S.C. § 5861(d) and 5871 |
| | ) | |
| | ) | COUNT 4: |
| | ) | POSSESSION OF AN |
| | ) | UNREGISTERED MACHINE GUN |
| | ) |    Vio. of 26 U.S.C. § 5861(d) and 5871 |
| | ) | |
| | ) | |

|  | ) | COUNT 5: |
|---|---|---|
|  | ) | POSSESSION OF MACHINE GUN |
|  | ) |   Vio. of 18 U.S.C. § 922(o) and |
|  | ) | 924(a)(2) |
|  | ) |  |
|  | ) | COUNT 6: |
|  | ) | MAKING OF A SILENCER |
|  | ) |   Vio. of 26 U.S.C. § 5861(f) and 5871 |
|  | ) |  |
|  | ) | COUNTS 7-8: |
|  | ) | CARRYING A FIREARM DURING A |
|  | ) | CRIME OF VIOLENCE |
|  | ) |   Vio. of 18 U.S.C. § 924(c)(1)(A) |
|  | ) |  |
|  | ) | COUNT 9: |
|  | ) | POSSESSION OF UNREGISTERED |
|  | ) | DESTRUCTIVE DEVICE |
|  | ) |   Vio. of 26 U.S.C. § 5861(d) and 5871 |
|  | ) |  |
|  | ) | COUNT 10: |
|  | ) | POSSESSION OF UNREGISTERED |
|  | ) | DESTRUCTIVE DEVICES |
|  | ) |   Vio. of 26 U.S.C. § 5861(d) and 5871 |

F I R S T   S U P E R S E D I N G   I N D I C T M E N T

The grand jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this indictment:

1. Francis Schaeffer Cox ("COX") was a resident of Fairbanks, Alaska. Cox is the self-described leader of the Alaska Peacemaker Militia and the Alaska Assembly Post. Cox is also the "Secretary of Defense" for the national Assembly Post, and is holder of the office self-described as "Commander-in-Chief" of the several States of the United States of America."

2

2. Coleman L. Barney ("BARNEY") was a resident of North Pole, Alaska and was also a command officer of the Alaska Peacemaker Militia and a member of the Alaska Assembly Post.

3. Lonnie G. Vernon ("VERNON") was a resident of Salcha, Alaska and was also an officer of the Alaska Peacemaker Militia and a member of the Alaska Assembly Post.

## DEFINITIONS

4. Title 26 of the United States Code makes it unlawful for a person to possess a machine gun, a silencer or a destructive device that is not registered to that person in the National Firearms Registration and Transfer Record, or to make a firearm in violation of the provisions of Title 26 of the United States Code. *See* 26 U.S.C. Sections 5845(a) and 5861 *et seq*.

5. Title 26, United States Code, Section 5845(f)(1) defines "destructive device" to include grenades, grenade-type devices such as a "Hornet's Nest" grenade and any combination of parts either designed or intended for use in converting any device into a destructive device and from which a destructive device may be readily assembled.

6. Title 18, United States Code, Section 921 defines the term "firearm silencer" and "firearm muffler" to mean any type of device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly of fabrication.

3

7. Title 18, United States Code, Section 924(c) makes it unlawful to carry a firearm during a crime of violence.

## COUNT 1

8. Paragraphs 1-7 are re-alleged herein.

9. Beginning at a time unknown, but starting at least on or about December 28, 2009, and continuing up to on or about March 10, 2011, in the District of Alaska, the defendants, FRANCIS SCHAEFFER COX, COLEMAN L. BARNEY, and LONNIE G. VERNON, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit the following offenses against the United States:

    A. To knowingly receive and possess firearms, specifically, silencers and destructive devices in the form of hand grenades, that were not registered to them in the National Firearms Registration and Transfer Record in violation of Title 26, U.S.C. Sections 5861(d) and 5871, and

    B. To knowingly possess firearms, specifically destructive devices without legal authorization, in violation of the provisions of Title 26, U.S.C. Section 5861(f) and 5871.

## PURPOSE OF THE CONSPIRACY

10. Throughout the time period alleged in the indictment, COX, BARNEY and VERNON possessed, acquired and sought to acquire illegal firearms, machine guns, destructive devices and firearms silencers as part of their membership in the Alaska Peacemaker Militia and the Alaska Assembly Post and in furtherance of their collective

4

belief that at some undetermined and unknown point in the future the Alaska Assembly Post and its militia would be compelled to take up arms against the government, be sufficiently armed and equipped to sustain a take-over of the "government" or become a new government in the event of a "government collapse." In preparation for this eventuality, the Alaska Assembly Post established a military arm, a legal arm, its own judiciary and its own monetary currency. The illegal firearms, machine guns, destructive devices, and firearms silencers were also possessed with the intent to thwart any effort by law enforcement from taking Cox into custody and were similarly possessed in furtherance of Cox's stated belief that no governmental law, state or federal, applied to him due to his status as a sovereign citizen.

## OVERT ACTS

11. In furtherance of the conspiracy, and in order to effect the objects thereof, the defendants committed numerous overt acts within the District of Alaska, including but not limited to:

A. In November, 2010, COX was scheduled for a television interview before a local television station in North Pole, Alaska. Prior to the interview, COX, BARNEY, VERNON and others developed an operational/tactical plan designed to provide armed security and protection for COX based on COX's stated belief that a federal (and completely fictitious) "hit team" had been sent to Fairbanks to assassinate him. BARNEY was the commanding officer of the armed security detail.

B. As part of the armed security detail/team, COX, BARNEY, VERNON and others known and unknown to the grand jury developed a tactical plan to provide security for COX. Part of the tactical plan included the wearing of body armor, the possession of hand grenades, arming with semi-automatic weapons, the possession of 37mm grenade launchers loaded with "Hornets Nest Rounds" along with the creation and implementation of a deadly force policy in the event the imagined "federal agents" arrived to arrest or attempt to kill COX.

C. As part of the security detail, BARNEY and others known and unknown to the grand jury established a tactical and armed perimeter security force of militia members around COX while COX was doing the television interview. This perimeter security force, among other things, trespassed on the private property of local citizenry while "patrolling"on COX's behalf, constructed a vehicular funneling point in order to stop and inspect the vehicles and identities of private citizens, and did, in fact, stop private citizens without lawful authority and under the force of arms. With respect to these citizens, the security detail asked for names and identification and prevented several citizens from traveling either to their place of employment or their own private residences.

D. While commanding this security detail, BARNEY was armed with a semi-automatic assault rifle. Attached to the "rail mount" of the semi-automatic rifle was a 37mm grenade launcher. Loaded inside the 37 mm grenade launcher was a 37mm

"Hornets Nest" grenade, an anti personal projectile which was capable of inflicting lethal injuries.

    E.    In late November, 2010, COX paid for 16,000 newspaper advertisements which stated the following:

> *Court Fraud!  Thousands of Judgments Void*
>
> *The laws of The Judiciary appear to have been fraudulently displaced by a privately owned for profit corporation deceptively named the "Alaska Court System."* ***This corporation and the Alaska Bar Association are under criminal investigation.*** *If you have had a case decided without full disclosure of the true nature of the "Alaska Court System" the damages can be corrected.* ***Judgments can be overturned and you may be entitled to restitution!*** *A public meeting to explain the process in simple laymen's terms will be held at the CARLSON CENTER ON DECEMBER 1, AT 6:30 PM. For more information, please call 456-2482.*

(Emphasis in original)

    F.    In December, 2010, COX, BARNEY, the Alaska Assembly Post and the National Assembly Post organized a "common law court" for the purpose of "trying" COX for violations of Alaska law for which COX had already been convicted and/or charged.  COX arranged for, and invited a "common law judge" to conduct the proceedings.  The "common law jury", partially composed of BARNEY and VERNON, unanimously "acquitted" COX of a prior conviction of Reckless Endangerment, in

7

violation of A.S. 11.41.250, a charge COX had pled guilty to in state court, and acquitted him of a charge of Misconduct Involving Weapons in the 5th Degree, in violation of A.S. 11.61.220, a crime for which he was scheduled to stand trial.

G. In December, 2010, Cox appeared at a hearing before the Hon. Jane F. Kauvar, in District Court for the State of Alaska, at Fairbanks. Prior to COX's appearance, COX, BARNEY, VERNON and other members of the militia developed a tactical security plan in the event COX was arrested by law enforcement. As part of that security plan, the militia members developed a deadly force policy to use against law enforcement.

H. During the December, 2010 hearing, COX told Judge Kauvar, among other things, that the neither Alaska district court nor any government had any jurisdiction over him. COX then told an Alaska State Trooper that his militia had the Alaska State Troopers outmanned and outgunned. COX failed to appear for the next scheduled hearing and a warrant was issued for his arrest. Thereafter, COX sought refuge in the homes of, respectively, VERNON and BARNEY.

I. After this hearing, and on or about February 4, 2011, COX instructed VERNON and another person to travel to Anchorage to acquire hand grenades. COX also instructed VERNON to obtain the explosive described by COX as "C-4". COX explained to VERNON that he currently possessed some grenades with two-second fuses, and that he knew how to make grenades operational. VERNON stated that he knew from "cookbooks" that a person could add phosphorous to the grenades.

8

J. From February 4 through February 6, 2011, at the direction of COX, VERNON and another person travelled to and stayed in Anchorage for the purpose of obtaining hand grenades.

K. On or about February 4, 2011, while in Anchorage, VERNON met with others in an effort to obtain grenade bodies and approximately 50 grenade fuses.

L. From February 4, 2011, through March 10, 2011, VERNON and COX discussed the location of several self-described "weapons caches."

M. On February 12, 2011, in a meeting with BARNEY, COX stated that he would like to get grenades with "eight-second fuses." COX also stated that he wanted powder for the grenades that was stronger than what he currently had. COX stated that they had two-second fuses on his grenades.

N. On or about February 20, 2011, COX, BARNEY and another individual went to a "weapons cache" and removed approximately eight grenades and an assortment of other weapons.

O. On February 27, 2011, COX and BARNEY met with another person and requested to purchase, and ordered a pistol and silencer matched set, agreeing to pay $1,000 each. COX later agreed to trade a C-93 semi-automatic rifle, with a lower receiver, in lieu of the $1,000 cash purchase price. COX stated that the lower end receiver would, after a some modification, make the C-93 a fully automatic firearm.

P. On or about March 1, 2011, COX met with the same person that they ordered the pistol and silencers from and ordered 25 grenades. COX stated that the

grenades he currently possessed had two-second fuses. COX asked if the grenades that were for sale were eight-second fuses and asked if he (COX) could get a volume discount on the price. COX stated if they could get the price down to $70 per grenade, he could buy as much as he wanted.

  Q. On or about March 5, 2011, COX was informed that only eight grenades were available at a specific price. COX replied he was under the impression he would be receiving 25 grenades. COX nevertheless agreed to purchase the eight hand grenades and thought the price was reasonable. COX also stated that once he got his family transported out of Alaska he was going to return to Alaska to wage guerilla warfare.

  R. On March 10, 2011, COX and BARNEY met with the person with whom they had placed their order for a pistol equipped with a silencer and grenades so that they could purchase these items. COX and BARNEY each received a pistol with a silencer and were arrested while in the process of examining the four hand grenades, not knowing that the grenades were inert. BARNEY carried $5,000 in cash on his person for the purpose of purchasing additional guns and destructive devices.

  S. From on or about February 19, 2011, and continuing up to March 10, 2011, COX and BARNEY stored the components for destructive devices, a fully automatic Sten 9mm machine gun, and a .22 caliber firearm silencer and associated Walther P-22, .22 pistol in a utility trailer on BARNEY's property.

  T. On March 10, 2011, COX and BARNEY moved the white trailer from BARNEY's property and left it parked in the parking lot of the Ice Park, in Fairbanks,

Alaska. At that time, the trailer contained four live smoke grenade fuses, 17 grenade bodies, black powder, chemical welding solution, a Sten 9mm fully automatic machine gun, a Walther P-22 .22 caliber pistol and .22 firearm silencer.

U. On March 10, 2011, LONNIE VERNON purchased three .22 pistol/silencer combinations, and four hand grenades from the same individual as COX and BARNEY.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNT 2

12. Paragraphs 1 through 7 are re-alleged herein.

13. Between or about February 4, 2011, and continuing until on or about March 10, 2011, in the District of Alaska, the defendants, FRANCES SCHAEFFER COX and COLMAN L. BARNEY, did knowingly possess firearms, specifically destructive devices, which were not registered to either of them in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 3

14. Paragraphs 1 through 7 are re-alleged herein.

15. Beginning at an exact time unknown to the grand jury, but at least from on or about January 8, 2008, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCES SCHAEFFER COX, did knowingly possess a firearm, specifically a silencer attached to a .22 caliber Walther Model P-22, serial

11

number N063641, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 4

16. Paragraphs 1 through 7 are re-alleged herein.

17. Between on or about February 4, 2011, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCES SCHAEFFER COX, did knowingly possess a firearm, specifically a Sten 9mm machine gun, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 5

18. Paragraphs 1 through 7 are re-alleged herein.

19. Between on or about February 4, 2011, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCES SCHAEFFER COX, did knowingly possess a machine gun, specifically a Sten 9mm machine gun.

All of which is in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNT 6

20. Paragraphs 1 through 7 are re-alleged herein.

21. Beginning at an exact time unknown to the grand jury, but at least from on or about January 8, 2008 and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCES SCHAEFFER COX, did knowingly make a firearm, specifically a silencer which was attached to a .22 caliber Walther Model P-22, serial number N063641, in violation of Title 26 of the United States Code.

All of which is in violation of Title 26, United States Code, Sections 5861(f) and 5871.

## COUNT 7

22. Paragraphs 1 through 7 are re-alleged herein

On or about March 10, 2011, within the District of Alaska, the defendant, FRANCES SCHAEFFER COX did knowingly and intentionally possess a firearm, specifically, a Glock .40 pistol, serial number MMT235, in furtherance of a crime of violence, that is, conspiracy to possess destructive devices in violation of Title 18, United States Code, Section 371, as described in Count 1 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(I).

## COUNT 8

23. Paragraphs 1 through 7 are re-alleged herein

24. On or about March 10, 2011, within the District of Alaska, the defendant, COLEMAN L. BARNEY did knowingly and intentionally possess firearms, specifically, a Glock .40 pistol, serial number MBU924, and a Ruger .380 pistol, serial number 371-50501, in furtherance of a crime of violence, that is, conspiracy to possess destructive

13

devices in violation of Title 18, United States Code, Section 371, as described in Count 1 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(I).

## COUNT 9

25. Paragraphs 1 through 7 are re-alleged herein.

26. Between on or about November 15, 2010, and continuing to on or about March 10, 2011, in the District of Alaska, the defendant, COLEMAN L. BARNEY, did knowingly possess a destructive device, specifically a 37mm grenade in the form of a "Hornets Nest" round and an associated 37mm launcher, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 10

27. Paragraphs 1 through 7 are re-alleged herein.

28. Between on or about November 15, 2010, and continuing up to on or about March 10, 2011, in the District of Alaska, the defendant, FRANCES SCHAEFFER COX, did knowingly possess a destructive device, specifically a 37mm grenade in the form of a "Hornets Nest" round and an associated 37mm launcher, which was not registered to him in the National Firearms Registration and Transfer Record.

//

//

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

A TRUE BILL.

                                           s/Grand Jury Foreperson
                                           GRAND JURY FOREPERSON

s/Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov


s/Joseph W. Bottini
JOSEPH W. BOTTINI
Assistant U.S. Attorney
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: joe.bottini@usdoj.gov


s/Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: karen.loeffler@usdoj.gov

DATED: 11/16/2011