KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
JOSEPH W. BOTTINI
YVONNE LAMOUREUX
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
        joe.bottini@usdoj.gov
        yvonne.lamoureux@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:11-CR-00022-RJB |
| | ) | |
| Plaintiff, | ) | COUNT 1: |
| | ) | CONSPIRACY TO POSSESS |
| vs. | ) | UNREGISTERED SILENCERS AND |
| | ) | DESTRUCTIVE DEVICES |
| | ) | Vio. of 18 U.S.C. § 371 |
| FRANCIS SCHAEFFER COX, | ) | |
| COLEMAN L. BARNEY, and | ) | |
| LONNIE G. VERNON, | ) | COUNTS 2, 9-11: |
| | ) | POSSESSION OF UNREGISTERED |
| Defendants. | ) | DESTRUCTIVE DEVICES |
| | ) | Vio. of 26 U.S.C. § 5861(d) and 5871 |
| | ) | |
| | ) | COUNT 3: |
| | ) | POSSESSION OF AN |
| | ) | UNREGISTERED SILENCER |
| | ) | Vio. of 26 U.S.C. § 5861(d) and 5871 |
| | ) | |
| | ) | COUNT 4: |
| | ) | POSSESSION OF AN |
| | ) | UNREGISTERED MACHINE GUN |
| | ) | Vio. of 26 U.S.C. § 5861(d) and 5871 |

|   |   |
|---|---|
| ) | COUNT 5: |
| ) | ILLEGAL POSSESSION OF |
| ) | MACHINE GUN |
| ) |   Vio. of 18 U.S.C. § 922(o) and |
| ) | 924(a)(2) |
| ) | |
| ) | COUNT 6: |
| ) | MAKING OF A SILENCER |
| ) |   Vio. of 26 U.S.C. § 5861(f) and 5871 |
| ) | |
| ) | COUNTS 7-8, 13-15: |
| ) | CARRYING FIREARMS DURING A |
| ) | CRIME OF VIOLENCE |
| ) |   Vio. of 18 U.S.C. § 924(c)(1)(A) |
| ) | |
| ) | COUNT 12: |
| ) | CONSPIRACY TO MURDER |
| ) |   Vio. of 18 U.S.C. §§ 1117, 1114 |
| ) | |
| ) | COUNT 16: |
| ) | SOLICITATION TO COMMIT A |
| ) | CRIME OF VIOLENCE |
| ) |   Vio. of 18 U.S.C. § 373 |
| ) | |
| ) | CRIMINAL FORFEITURE |
| ) | ALLEGATIONS 1 - 7: |
| _____ ) |   26 U.S.C. § 5872 |

# T H I R D  S U P E R S E D I N G  I N D I C T M E N T

The grand jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.    Francis Schaeffer Cox ("COX") was a resident of Fairbanks, Alaska. Cox

is the self-described leader of the Alaska Peacemaker Militia and the Alaska Assembly

2

Post. Cox is also the "Secretary of Defense" for the national Assembly Post, and is holder of the office self-described as "Commander-in-Chief" of the "several States of the United States of America."

2.     Coleman L. Barney ("BARNEY") was a resident of North Pole, Alaska and was also a command officer of the Alaska Peacemaker Militia and a supporter of the Alaska Assembly Post.

3.      Lonnie G. Vernon ("VERNON") was a resident of Salcha, Alaska and was also an officer of the Alaska Peacemaker Militia and a member of the Alaska Assembly Post.

<u>DEFINITIONS</u>

4.     Title 26 of the United States Code makes it unlawful for a person to possess a machine gun, a silencer or a destructive device that is not registered to that person in the National Firearms Registration and Transfer Record, or to make a firearm in violation of the provisions of Title 26 of the United States Code. *See* 26 U.S.C. Sections 5845(a) and 5861 *et seq*.

5.     Title 26, United States Code, Section 5845(f)(1) defines "destructive device" to include grenades, any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, such as a 37mm launcher combined with a "Hornet's Nest" anti-personnel round, and any combination of parts either designed or intended for use in converting any

3

device into a destructive device and from which a destructive device may be readily assembled, such as hand grenades.

6.     Title 18, United States Code, Section 921 defines the term "firearm silencer" and "firearm muffler" to mean any type of device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly of fabrication.

7.     Title 18, United States Code, Section 924(c) makes it unlawful to carry a firearm during and in relation to a crime of violence.

<u>COUNT 1</u>

8.     Paragraphs 1-7 are re-alleged herein.

9.     Beginning at a time unknown, but starting at least on or about August 1, 2009, and continuing up to on or about March 10, 2011, in the District of Alaska, the defendants, FRANCIS SCHAEFFER COX, COLEMAN L. BARNEY, and LONNIE G. VERNON, together with others known and unknown to the grand jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit the following offenses against the United States: to knowingly receive and possess firearms, specifically, silencers and destructive devices in the form of hand grenades and 37mm launchers combined with a "Hornet's Nest" anti-personnel round, that were not registered to them in the National Firearms Registration and Transfer Record in violation of Title 26, U.S.C. Sections 5861(d) and 5871.

4

10.    Throughout the time period alleged in the indictment, COX, BARNEY and VERNON possessed, acquired and sought to acquire illegal firearms, machine guns, destructive devices and firearms silencers as part of their membership in the Alaska Peacemaker Militia and the Alaska Assembly Post and in furtherance of their collective belief that at some undetermined and unknown point in the future they would be compelled to take up arms against the government, be sufficiently armed and equipped to sustain a take-over of the "government" or become a new government in the event of a "government collapse."  In preparation for this "eventuality", COX used the Alaska Assembly Post to establish a military arm, a legal arm, a separate judiciary and monetary currency.  In addition, COX developed a list of individuals employed by the state and federal government and tasked an unindicted co-conspirator to locate their personal information, including home addresses, so that COX and others could kill them in the event of a "government collapse", COX's arrest by law enforcement, and/or a planned takeover of government.  COX, BARNEY, and others also created a plan to kill two government employees in the event that one of them was arrested by the government. The illegal firearms, machine guns, destructive devices, and firearms silencers were also possessed with the intent to thwart any effort by law enforcement from taking COX into custody and were similarly possessed in furtherance of COX's stated belief that no governmental law, state or federal, applied to him due to his status as a sovereign citizen.

11.    In furtherance of the conspiracy, and in order to effect the objects thereof, the defendants committed numerous overt acts within the District of Alaska, including but not limited to:

A.    In the fall of 2009, COX and another unindicted co-conspirator developed a plan to start a list of targets and compile personal information about individuals associated with the government.  COX periodically directed the unindicted co-conspirator to update the list and locate personal information, such as home addresses, of certain individuals employed by the State of Alaska (including law enforcement), and those in certain roles employed by the State of Alaska and the United States including federal law enforcement officers.  In the spring of 2010, COX met with the unindicted co-conspirator and directed the unindicted co-conspirator to add to the list certain federal officers and employees, including officers of the United States Marshals Service, the Transportation Security Administration, and the Department of Homeland Security Customs and Border Protection, and Alaska State Troopers.  During this meeting, the unindicted co-conspirator drew a sketch of the federal building in Fairbanks, Alaska while COX and the unindicted co-conspirator discussed how to identify federal law enforcement officers. Between the fall of 2009 and March 2011, COX, BARNEY, and VERNON intended to rely on the list and corresponding information gathered in order to kill those individuals

6

in the event of a "government collapse", COX's arrest by law enforcement, and/or a planned takeover of government by them.

B.     In November, 2010, COX was scheduled for a television interview before a local television station in North Pole, Alaska.  Prior to the interview, COX, BARNEY, VERNON and others developed an operational/tactical plan designed to provide armed security and protection for COX based on COX's stated belief that a federal (and completely fictitious) "hit team" had been sent to Fairbanks to assassinate him. BARNEY was the commanding officer of the armed security detail.

C.     As part of the armed security detail/team, COX, BARNEY, VERNON and others known and unknown to the grand jury developed a tactical plan to provide security for COX.  Part of the tactical plan included the wearing of body armor, the possession of hand grenades, arming with semi-automatic weapons, the possession of 37mm launchers loaded with Hornets Nest anti-personnel rounds along with the creation and implementation of a deadly force policy in the event the federal agents arrived to arrest or attempt to kill COX.

D.     On or about November 23, 2010, as part of the security detail, BARNEY, VERNON, and others known and unknown to the grand jury established a tactical and armed perimeter security force of militia members around COX while COX was doing the television interview.  This perimeter security force, among other things, trespassed on the private property of local citizenry while "patrolling"on COX's behalf, constructed a

7

vehicular funneling point in order to stop and inspect the vehicles and identities of private citizens, and did, in fact, stop private citizens without lawful authority and under the force of arms. With respect to these citizens, the security detail asked for names and identification and prevented citizens from traveling either to their place of employment or their own private residences.

E.  While enacting this security detail, BARNEY and VERNON were armed with firearms. BARNEY was armed with a semi-automatic assault rifle, an AR-15 .223 rifle. Attached to the "rail mount" of the semi-automatic rifle was a 37mm launcher. Loaded inside the 37 mm launcher was a "Hornets Nest" anti-personnel round. VERNON was armed with a semi-automatic assault rifle, a Sig Arms AR-15 .223 rifle.

F.  In late November, 2010, COX paid for 16,000 newspaper advertisements which stated the following:

*Court Fraud!  Thousands of Judgments Void*

*The laws of The Judiciary appear to have been fraudulently displaced by a privately owned for profit corporation deceptively named the "Alaska Court System."* **This corporation and the Alaska Bar Association are under criminal investigation.** *If you have had a case decided without full disclosure of the true nature of the "Alaska Court System" the damages can be corrected.* **Judgments can be overturned and you may be entitled to restitution!** *A public meeting to explain the process in simple laymen's terms will be held at the CARLSON*

8

*CENTER ON DECEMBER 1, AT 6:30 PM. For more information, please call 456-2482.*

(Emphasis in original)

G.      In December, 2010, COX, BARNEY, the Alaska Assembly Post and the National Assembly Post organized a "common law court" for the purpose of "trying" COX for violations of Alaska law for which COX had already been convicted and/or charged.  COX arranged for, and invited a "common law judge" to conduct the proceedings.  On or about January 16, 2011, the "common law jury", partially composed of BARNEY and VERNON, unanimously "acquitted" COX of a prior conviction of Reckless Endangerment, in violation of A.S. 11.41.250, a charge COX had pled guilty to in state court, and acquitted him of a charge of Misconduct Involving Weapons in the 5th Degree, in violation of A.S. 11.61.220, a crime for which he was scheduled to stand trial.

H.      In December, 2010, Cox appeared at a hearing before the Hon. Jane F. Kauvar, in District Court for the State of Alaska, at Fairbanks. Prior to COX's appearance, COX, BARNEY, VERNON and other members of the militia developed a tactical security plan in the event COX was arrested by law enforcement. As part of that security plan, the militia members developed a deadly force policy to use against law enforcement.  At the hearing, COX told Judge Kauvar, among other things, that neither the Alaska district court nor any government had any jurisdiction over him.

9

I.       After a hearing in December 2010, COX told an Alaska State Trooper that his militia had the Alaska State Troopers outmanned and outgunned and could have them all dead in one night. COX failed to appear for the next scheduled hearing on or about February 14, 2011 and a warrant was issued for his arrest. Thereafter, COX sought refuge in the homes of, respectively, VERNON and BARNEY.

J.       On or about February 4, 2011, COX instructed VERNON and another person to travel to Anchorage to acquire hand grenades. COX explained to VERNON that he has access to the explosive described by COX as "C-4", that he currently possessed some grenades with two-second fuses, and that he knew how to make grenades operational. VERNON stated that he knew that a person could add phosphorous to the grenades.

K.      From February 4 through February 6, 2011, at the direction of COX, VERNON and another person travelled to and stayed in Anchorage for the purpose of obtaining hand grenades.

L.       On or about February 4, 2011, while in Anchorage, VERNON met with others in an effort to obtain grenade bodies and approximately 50 grenade fuses.

M.      From February 4, 2011, through March 10, 2011, VERNON and COX discussed the location of several self-described "weapons caches."

N.      On February 12, 2011, COX held a meeting with others associated with the command staff of the Alaska Peacemaker Militia. COX advised that he was not going to

10

appear for his upcoming court hearing on February 14, 2011. COX directed the others regarding actions they should take in the event that COX was arrested for failing to appear. COX and others developed a "2-4-1" plan that if COX or any militia members were killed then COX and the others would kill two other people (specifically law enforcement, judges, or district attorneys) in return.

O.    On or about February 12, 2011, in a meeting with BARNEY, COX stated that he would like to get grenades with "eight-second fuses." COX also stated that he wanted powder for the grenades that was stronger than what he currently had. COX stated that they had two-second fuses on his grenades.

P.    On or about February 12, 2011, COX provided home addresses of law enforcement officers to another individual and directed that individual to obtain the target list with additional information from an unindicted co-conspirator and to conduct surveillance at law enforcement officers' homes.

Q.    On or about February 21, 2011, COX, BARNEY and another individual went to a "weapons cache" and removed approximately eight grenades and an assortment of other weapons.

R.    On or about February 26, 2011, COX and BARNEY met with another person and requested to purchase, and ordered a pistol and silencer matched set, agreeing to pay $1,000 each. COX later agreed to trade a C-93 semi-automatic rifle, with a lower

11

receiver, in lieu of the $1,000 cash purchase price. COX stated that the lower end receiver would, after some modification, make the C-93 a fully automatic firearm.

      S.      On or about March 1, 2011, COX met with the same person that they ordered the pistol and silencers from and ordered 25 grenades. COX stated that the grenades he currently possessed had two-second fuses. COX asked if the grenades that were for sale were eight-second fuses and asked if he (COX) could get a volume discount on the price. COX stated if they could get the price below $70 per grenade, he could buy as much as he wanted.

      T.      On or about March 4, 2011, COX was informed that only eight grenades were available at a specific price. COX replied he was under the impression he would be receiving 25 grenades. COX nevertheless agreed to purchase the eight hand grenades and thought the price was reasonable. COX also stated that once he got his family transported out of Alaska he was going to return to Alaska to wage guerilla warfare.

      U.      On or about March 7, 2011, COX and a militia member traveled together in an attempt to locate an unindicted co-conspirator in an attempt to acquire the list of targets described in paragraph 11 A of this section. COX and the militia member were unable to locate the unindicted co-conspirator. COX left contact information for him at the residence of the unindicted co-conspirator. Later that evening, COX met in person with the unindicted co-conspirator in an attempt to obtain a copy of the target list which COX intended to distribute to other members of the militia.

12

V.      On March 10, 2011, COX and BARNEY met with the person with whom they had placed their order for a pistol equipped with a silencer and grenades so that they could purchase these items. COX and BARNEY each received a pistol with a silencer and were arrested while in the process of examining the four hand grenades, not knowing that the grenades were inert. BARNEY carried $5,000 in cash on his person for the purpose of purchasing additional guns and destructive devices.

W.      From on or about February 19, 2011, and continuing up to March 10, 2011, COX and BARNEY stored the components for destructive devices, a fully automatic Sten 9mm machine gun, serial number FB2539, and a .22 caliber firearm silencer and associated Walther P-22, .22 pistol, serial number N063641 in a utility trailer on BARNEY's property.

X.      On March 10, 2011, COX and BARNEY moved the white trailer from BARNEY's property and left it parked in the parking lot of the Ice Park, in Fairbanks, Alaska. At that time, the trailer contained four live smoke grenade fuses, 17 grenade bodies, black powder, chemical welding solution, a Sten 9mm fully automatic machine gun, serial number FB2539, a Walther P-22 .22 caliber pistol, serial number N063641, and .22 firearm silencer, two 37mm launchers, and four "Hornet's Nest" anti-personnel rounds.

Y.      On March 10, 2011, LONNIE VERNON purchased a .22 pistol/silencer combination, and two hand grenades from the same individual as COX and BARNEY, not knowing that the grenades were inert.

13

All of which is in violation of Title 18, United States Code, Section 371.

COUNT 2

12.     Paragraphs 1 through 7 are re-alleged herein.

13.     Between on or about February 4, 2011, and continuing until on or about March 10, 2011, in the District of Alaska, the defendants, FRANCIS SCHAEFFER COX and COLEMAN L. BARNEY, did knowingly possess firearms, specifically destructive devices in the form of any combination of parts either designed or intended for use in converting any device into a destructive device and from which a destructive device may be readily assembled, specifically four hand grenades, which were not registered to either of them in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

COUNT 3

14.     Paragraphs 1 through 7 are re-alleged herein.

15.     Beginning at an exact time unknown to the grand jury, but at least from on or about January 8, 2008, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, did knowingly possess a firearm, specifically a silencer attached to a .22 caliber Walther Model P-22, serial number N063641, which was not registered to him in the National Firearms Registration and Transfer Record.

14

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 4

16.     Paragraphs 1 through 7 are re-alleged herein.

17.     Between on or about March 1, 2010, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, did knowingly possess a firearm, specifically a Sten 9mm machine gun, serial number FB2539, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 5

18.     Paragraphs 1 through 7 are re-alleged herein.

19.     Between on or about March 1, 2010, and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, did knowingly possess a machine gun, specifically a Sten 9mm machine gun, serial number FB2539.

All of which is in violation of Title 18, United States Code, Sections 922(o) and 924(a)(2).

## COUNT 6

20.     Paragraphs 1 through 7 are re-alleged herein.

15

21.     Beginning at an exact time unknown to the grand jury, but at least from on or about January 8, 2008 and continuing until on or about March 10, 2011, in the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, did knowingly make a firearm, specifically a silencer which was attached to a .22 caliber Walther Model P-22, serial number N063641, in violation of Title 26 of the United States Code.

All of which is in violation of Title 26, United States Code, Sections 5861(f) and 5871.

## COUNT 7

22.     Paragraphs 1 through 7 are re-alleged herein.

23.     On or about March 10, 2011, within the District of Alaska, the defendant, FRANCIS SCHAEFFER COX did knowingly carry a firearm, specifically, a Glock .45 caliber, serial number MMT235, during and in relation to a crime of violence, that is, conspiracy to possess silencers and destructive devices in violation of Title 18, United States Code, Section 371, as described in Count 1 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 8

24.     Paragraphs 1 through 7 are re-alleged herein.

25.     On or about March 10, 2011, within the District of Alaska, the defendant, COLEMAN L. BARNEY did knowingly carry firearms, specifically, a Glock .40 pistol, serial number MBU924, and a Ruger .380 pistol, serial number 371-50501, during and in relation to a crime of violence, that is, conspiracy to possess silencers and destructive

16

devices in violation of Title 18, United States Code, Section 371, as described in Count 1 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 9

26.     Paragraphs 1 through 7 are re-alleged herein.

27.     On or about November 23, 2010, in the District of Alaska, the defendant, COLEMAN L. BARNEY, did knowingly possess a destructive device, specifically a 37mm launcher loaded with a "Hornets Nest" anti-personnel round, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

## COUNT 10

28.     Paragraphs 1 through 7 are re-alleged herein.

29.     Beginning at an exact time unknown to the grand jury, but at least from on or about November 23, 2010, and continuing up to on or about March 10, 2011, in the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, did knowingly possess a destructive device, specifically a "Hornets Nest" anti-personnel round and an associated 37mm launcher, which was not registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and 5871.

17

30.    Paragraphs 1 through 7 are re-alleged herein.

31.    On or about March 10, 2011, in the District of Alaska, the defendant,
COLEMAN L. BARNEY, did knowingly possess a destructive device, specifically four
"Hornets Nest" anti-personnel rounds and two associated 37mm launchers, which was not
registered to him in the National Firearms Registration and Transfer Record.

All of which is in violation of Title 26, United States Code, Sections 5861(d) and
5871.

COUNT 12

32.    Paragraphs 1 through 7 are re-alleged herein.

33.    Between on or about August 2009, and continuing up to on or about March
10, 2011, in the District of Alaska, the defendants, FRANCIS SCHAEFFER COX,
COLEMAN L. BARNEY, and LONNIE G. VERNON did knowingly, willfully, and
unlawfully conspire and agree together and with other persons known and unknown to the
grand jury to kill, with premeditation and malice aforethought, officers and employees of
the United States, including law enforcement officers, while such officers are engaged in
and on account of the performance of official duties, in violation of Title 18, United
States Code, Sections 1111 and 1114.

34.    In furtherance of the conspiracy, and in order to effect the object thereof,
the defendants committed numerous overt acts within the District of Alaska, including but
not limited to:

A.    Paragraphs 11A through 11Y are re-alleged herein.

All of which is in violation of Title 18, United States Code, Section 1117.

## COUNT 13

35.    Paragraphs 1 through 7 are re-alleged herein.

36.    On or about November 23, 2010, within the District of Alaska, the defendant, COLEMAN L. BARNEY did knowingly carry a firearm, specifically a semi-automatic assault rifle, a ParaUSA AR-15 .223 rifle, serial number TR0645, during and in relation to a crime of violence, that is, conspiracy to murder, in violation of Title 18, United States Code, Section 1117, as described in Count 12 of this indictment, all of which is in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i).

## COUNT 14

37.    Paragraphs 1 through 7 are re-alleged herein.

38.    On or about November 23, 2010, within the District of Alaska, the defendant, LONNIE G. VERNON did knowingly carry a firearm, specifically a semi-automatic assault rifle, a Sig Arms .223 rifle, serial number JS003732, during and in relation to a crime of violence, that is, conspiracy to murder, in violation of Title 18, United States Code, Section 1117, as described in Count 12 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 15

39.    Paragraphs 1 through 7 are re-alleged herein.

19

40.     On or about November 23, 2010, within the District of Alaska, the defendant, FRANCIS SCHAEFFER COX did knowingly carry a firearm, specifically a handgun, during and in relation to a crime of violence, that is, conspiracy to murder, in violation of Title 18, United States Code, Section 1117, as described in Count 12 of this indictment, all of which is in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 16

41.     Paragraphs 1 through 7 are re-alleged herein.

42.     Beginning at a time unknown, but starting at least on or about November 15, 2010 and continuing up to on or about March 10, 2011, within the District of Alaska, the defendant, FRANCIS SCHAEFFER COX, with the intent that COLEMAN L. BARNEY, LONNIE G. VERNON, and others known and unknown to the grand jury engage in conduct constituting a felony that has as an element the use of physical force against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, did solicit, command, induce and endeavor to persuade COLEMAN L. BARNEY, LONNIE G. VERNON, and others known and unknown to the grand jury to engage in such conduct, that is, to murder an officer of the United States in violation of Title 18, United States Code, Section 1114, in violation of Title 18, United States Code, Section 373.

//

//

20

## CRIMINAL FORFEITURE ALLEGATION NO. 1

43.     As a result of committing the offense of Possession of Unregistered Destructive Devices, as alleged in Count 2, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 2, defendants FRANCIS SCHAEFFER COX and COLEMAN L. BARNEY, shall forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**All component parts from which hand grenades could be assembled**

## CRIMINAL FORFEITURE ALLEGATION NO. 2

44.     As a result of committing the offense of Possession of an Unregistered Silencer, as alleged in Count 3, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 3, defendant FRANCIS SCHAEFFER COX, shall forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**One Silencer attached to a .22 caliber Walther Model P-22, Serial Number N063641**

## CRIMINAL FORFEITURE ALLEGATION NO. 3

45.     As a result of committing the offense of Possession of an Unregistered Machine Gun, as alleged in Count 4, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 4, defendant FRANCIS SCHAEFFER COX, shall

21

forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**One Sten 9mm Machine Gun, Serial Number FB2539**

**CRIMINAL FORFEITURE ALLEGATION NO. 4**

46.     As a result of committing the offense of Making a Silencer, as alleged in Count 6, in violation of Title 26, United States Code, Section 5861(f), and upon conviction of Count 6, defendant FRANCIS SCHAEFFER COX, shall forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**One Silencer attached to a .22 caliber Walther Model P-22, Serial Number N063641**

**CRIMINAL FORFEITURE ALLEGATION NO. 5**

47.     As a result of committing the offense of  Possession of an Unregistered Destructive Device, as alleged in Count 9, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 9, defendant COLEMAN L. BARNEY, shall forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**37mm Launcher and "Hornet's Nest" Anti-personnel Round**

//

//

22

## CRIMINAL FORFEITURE ALLEGATION NO. 6

48.     As a result of committing the offense of Possession of an Unregistered Destructive Device, as alleged in Count 10, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 10, defendant FRANCIS SCHAEFFER COX, shall forfeit to the United States all firearms involved in or used in the violation, pursuant to Title 26, United States Code, Section 5872, including without limitation to the following:

**37mm Launcher and "Hornet's Nest" Anti-personnel Round**

## CRIMINAL FORFEITURE ALLEGATION NO. 7

49.     As a result of committing the offense of Possession of an Unregistered Destructive Device, as alleged in Count 11, in violation of Title 26, United States Code, Section 5861(d), and upon conviction of Count 11, defendant COLEMAN L. BARNEY, shall forfeit to the United States all firearms

//

//

//

//

//

//

//

//

23

involved in or used in the violation, pursuant to Title 26, United States Code, Section

5872, including without limitation to the following:

**37mm Launcher and "Hornet's Nest" Anti-personnel Round**

A TRUE BILL.

s/ Grand Jury Foreperson
GRAND JURY FOREPERSON

s/ Steven E. Skrocki
STEVEN E. SKROCKI
Assistant U.S. Attorney
United States of America

s/ Joseph W. Bottini
JOSEPH W. BOTTINI
Assistant U.S. Attorney
United States of America

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney
United States of America

DATED: 1/19/12